## In re Hunlock's Creek Cemetery.

*Granville J. Clark* and *William A. O'Connor*, for petitioner.
*Francis P. McDermott* and *Albert W. Johnson, Jr.*, contra.

JONES, J.—Hunlock's Creek Cemetery is located on a bluff at Hunlock's Creek, Hunlock Township, this county, overlooking the state highway. The plot was originally owned and dedicated as a cemetery by Jonathan Hunlock in burying the remains of his wife therein in 1818, as appears by that date upon a headstone, and used by the public in that locality for burial purposes with his knowledge and acquiescence until his death and burial therein, and since, without any disturbance until the annoyance hereinafter related.

In April, 1902, B. Frank Croop, plaintiff, acquired title by deed to a tract of land containing 125 acres surrounding the cemetery plot. Croop had already recognized the plot as a burial ground and assented thereto by burying therein his relatives, since removed. Subsequently, Croop made a lease to Isaac Saba for a part of the land adjacent to the burial plot for the pur-

poses of excavating sand and gravel, and Saba, in doing so, encroached upon the lateral support of the plot, causing some of the remains to be exposed and endangering the whole plot; thereupon, some of the relatives of the dead buried therein made an application to the court to enjoin Saba from removing or carting away sand and gravel from the cemetery and from interfering with ingress and egress to and from the same. Pending these proceedings, Mr. Croop, plaintiff, filed this petition under the Act of May 19, 1923, P. L. 281, for an order authorizing the removal of the remains of all the dead from the burial plot to a burial ground provided by petitioner for reinterment of the bodies, or, at the election of persons in interest, to any cemetery, including the removal of markers and monuments at his expense, and the petition was heard in conjunction with the final hearing in the injunction proceedings.

The act confers upon the courts of quarter sessions jurisdiction and power to authorize the removal of the remains of the dead from private burial grounds. It provides that whenever any private burial ground, by reason of the drilling of oil wells, or the opening of mines or quarries in the vicinity thereof, or for any cause, has become, or shall hereafter become, unsightly, or an unsuitable place for the repose of the dead, the court of quarter sessions of the county in which such burial ground is situated, on petition of the trustee or trustees having charge thereof, or of any person having a relative buried therein, shall have jurisdiction and power to authorize and direct the removal of the remains of all dead from such private burial ground to such other suitable ground as shall be provided by the petitioner or petitioners for the reinterment of the bodies.

Notice of the presentation of the petition was duly given as required under the act, and upon the day set for hearing many relatives and friends of the dead appeared in court, some contesting and a few consenting to the application.

We would deny the right of the state to declare the removal of the remains in burial grounds for individual or private interest, restricting the state in the exercise of her police power to regulate graveyards for the public good and to remove decaying remains for the preservation of the health of the citizens and when a great public interest requires it, but only on compensation to others who have acquired a right of sepulture. But the appellate court, in Craig v. First Presbyterian Church, 88 Pa. 42, has declared that the right of the legislature to authorize the removal of the remains of the dead from cemeteries is well settled. It is based upon the theory of the police power necessary to the public health and comfort, and founded upon the suggestion that the founders of our cities had perhaps but a faint idea of their future growth and in early days failed to realize the sanitary evils attendant upon the interment of dead bodies in crowded cities.

This Act of 1923 applies only to private burial grounds. Cemeteries are usually set apart either by municipal authority or private enterprise and may be the property of the public devoted to the use of the public. Where a cemetery is conducted by a private corporation and it sells its lots for an agreed price to private individuals, the use is not a public but a private one.

In the case at bar, no municipality dedicated this cemetery and it was not conducted by a private corporation for profit, but a dedication was made by a former owner of the land to the burial of his family and to the public for burial purposes, and it was used by them for a period of more than 100 years.

No particular form or ceremony is necessary to dedicate land for the purposes of a cemetery. The assent of the owner and the fact that the land is used for the public purposes intended by the appropriation is sufficient. Acceptance by the public is necessary to complete the dedication, but such

acceptance may be implied from the acts and from the use of the land by the public for burial purposes, and the notorious use of property as a burial ground for upwards of twenty years, with the knowledge and acquiescence of the owner, affords presumptive evidence of its dedication as a public cemetery: 5 R. C. L. 238.

This cemetery is not a private burial ground, but a public one, and, therefore, does not come within the act of assembly. But even if it did, we would not be disposed to grant this petition. The right of burial in this cemetery is not an absolute right of property, but a privilege or license to be continued so long as the place continues to be used as a burial ground and revoked whenever public necessity requires it. In this case, the right of removal is claimed solely and purely for individual and private interest; it is to make money by taking ground appropriated for the dead and marketing it for sand and gravel. Petitioner, the owner of the tract surrounding the cemetery, leased a part thereof to Isaac Saba, defendant in the injunction proceedings, for the removal of sand and gravel, and we would not, under the discretionary power invested in the court under this act of assembly, even if it applies, permit the coining of money out of the bones and dust of the dead.

What has been so beautifully said by one of our chief justices on this subject matter is so applicable to this case that we quote his sentiments and condemnation of those individuals who would appropriate the sacred burial ground for purely commercial purposes, namely:

"Among all tribes and nations, savage and civilized, the resting places of the dead are regarded as sacred. There memory loves to linger and plant the choicest flowers; there the sorrowing heart renews the past, rekindles into life the viewless forms of the dead, revives the scenes where once they moved, and recalls the happy hours of love and friendship. There parent and child, husband and wife, relatives and friends, with broken spirits and crushed hopes, revisit often the spot where they deposited their dead. Who does not feel the fountains of his heart broken up and the warm gushings of emotion, when standing over the green sod which covers the departed. Wherever the simple stone is placed, or the marble monument is reared, spontaneous thought inscribes upon it 'sacred to the memory.' . . . The man who violates the homes of the dead, who erases the tablets by which affection records their lowly dwelling, is lost to natural feeling and does an act which harrows the heart and excites mankind to rage. The law seizes hold of him for condign punishment."

This cemetery cannot be classed as abandoned. It loses its character as a resting place of the dead only when those already interred are exhumed and removed. So long as it is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves, and so long as it is known or recognized by the public as a burial plot, it is not abandoned. Interments have been made within a period of two years and petitioner concedes indications of at least eighty-four graves therein and some since removed.

If other hearts have grown cold and some relatives and friends have failed to keep sacred and preserve it as a resting place for their dead, their negligence and short memories should not prejudice those whose love and affection have preserved the graves of their friends with monuments and markers and gravestones and kept up the identity of the spot as a graveyard.

We would not consider this cemetery abandoned so long as even one grave was recognized, respected and redeemed from oblivion. The heedlessness of those who have permitted graves to be worn away, monuments destroyed and the graves to lose their identity should not be considered an excuse and a

plea for the vandalism of the avaricious in invading the sacred and holy resting place of the dead.

The old road that existed upon the ground for access to the cemetery has been cut off by excavations, the lateral support has been invaded, causing the support to slide from underneath a part of the cemetery, carrying away some graves and all indications thereof, and the bones of some of the dead were found in the sand pit and brought into court as evidence.

Such excavation and conduct is deplorable and reprehensible and cannot be justified or condoned. It is an invasion of the sacred ground of burial and desecrating the tomb for the single commercial purpose of coining money from the support of the burial place of the dead.

We, therefore, refuse the petition for the reasons herein stated.

From Frank P. Slattery, Wilkes-Barre, Pa.